# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**SANAA A. NARRA**,

                Plaintiff,

                                                    No. 2:13-cv-12282

vs.                                           Hon. Gerald E. Rosen

**FANNIE MAE A/K/A FEDERAL**
**NATIONAL MORTGAGE ASSOCIATION**,

                Defendant,

and

**FEDERAL HOUSING FINANCE**
**AGENCY**,

                Intervenor Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### I. INTRODUCTION

Plaintiff Sanaa A. Narra asserts a variety of claims in this mortgage foreclosure case against Defendant Fannie Mae and Intervenor Defendant Federal Housing Finance Agency (FHFA). Presently before the Court are Defendants' Motions to Dismiss Plaintiff's Complaint. Having reviewed and considered Defendants' Motions and supporting and supplemental briefs, Plaintiff's response thereto, and the entire record of this matter, the Court has determined that the

1

relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide this matter "on the briefs." See Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

**A.    Pertinent Facts**

On July 16, 2004, Plaintiff took out a Mortgage with Countrywide Home Loans, Inc. on her home (the Property) in Oak Park, Michigan. (Plf's Compl., Dkt. # 1-5, at ¶¶ 1, 5). Plaintiff experienced financial difficulties in 2010 and 2011 and contacted her loan's servicer, non-party Bank of America, regarding her options. (*Id.* at ¶ 8). Bank of America advised that Plaintiff was not eligible for any programs or assistance because she was current on her Mortgage payments. (*Id.* at ¶ 9). Plaintiff then stopped making her Mortgage payments and submitted a request to Bank of America to modify her Mortgage. (*Id.* at ¶ 10). Bank of America then approved Plaintiff to enter into a "Trial Period Plan" (TPP), whereby Plaintiff was to make certain payments to Bank of America in place of her normal monthly Mortgage payments. (*Id.*; Ex. C to Plf's Resp., Dkt. # 15-3).[1] Though

---

[1] In Response to Defendants' Motions to Dismiss, Plaintiff attached, among other things, a letter from Bank of America offering Plaintiff the opportunity to enter into the TPP and an Affidavit that essentially replicates the factual averments in

this trial modification offer indicates that Plaintiff's Mortgage "will be permanently modified" if Plaintiff timely makes all "trial plan payments," it is clear that the Plaintiff and Bank of America never formalized a "final" modification of her Mortgage. (*Id.* at ¶¶ 11-13, 34; Ex. C to Plf's Resp., Dkt. # 15-3, at 2).

Plaintiff made these trial modification payments for July, August, and September 2011. (Plf's Compl., Dkt. # # 1-5, at ¶ 11). She also made two additional payments for October and November 2011 because Bank of America

---

her Complaint regarding the TPP. (Exs. C & D. to Plf's Resp., Dkt. ## 15-3, 15-4). The Court will consider Bank of America's letter without converting Defendants' Motions to ones for Summary Judgment because it is referred to in Plaintiff's Complaint and is central to her claims. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). It also just "fills in the contours and details of [P]laintiff's complaint, and add[s] nothing new." *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). The Court also notes that the copy of this letter submitted to this Court by Plaintiff is not complete -- the bottom portion of the document is missing. On multiple occasions, this Court requested that Plaintiff submit a complete version of this letter. Plaintiff's counsel did not respond to these requests, let alone provide a complete version of this letter. This fact, however, does not alter this Court's conclusions regarding the sufficiency of Plaintiff's Complaint.

Plaintiff's Affidavit, however, faces a different fate. Though it apparently adds nothing new, the Court will not consider it. It is "signed" with an electronic "/s/" which does not comply with Rule 9(d) of this Court's Electronic Filing Policies and Procedures regarding affidavits of non-attorneys. *Trs. of the Iron Workers Local 25 Pension Fund v. Crawford Door Sales, Inc.*, 2010 WL 1526363, at *5 n.2 (E.D. Mich. April 16, 2010) (Cleland, J.) ("The court does not accept electronic signatures for affiant's signatures."). The Court also notes that the notary in this case, Plaintiff's attorney, "[s]ubscribed and swor[e]" that this affidavit was signed before her on August 25, 2013, nearly two months after the expiration of her notary commission on July 1, 2013. (Ex. D. to Plf's Resp., Dkt. # 15-4, at 4).

"did not yet have her paperwork ready to finalize the modification." (*Id.*). Bank of America then "instructed [Plaintiff] not to remit any further payments until her paperwork was final, as they (sic) could not correctly apply the monies to her account due to their (sic) internal recordkeeping system." (*Id.* at ¶ 12). Plaintiff then "received a letter dated January 13, 2012, indicating that Bank of America denied her modification and that a sheriff's sale was scheduled for February 7, 2012." (*Id.* at ¶ 13). At the resulting Sheriff's sale, Bank of America purchased the Property. (*Id.* at ¶ 15). Bank of America quitclaimed the Property to Defendant Fannie Mae on March 8, 2012. (*Id.* at ¶ 17). The redemption period expired February 7, 2013. (*Id.* at ¶ 16).

**B.  Procedural History**

This case arrives before this Court in a slightly different posture than most foreclosure actions. A week after the expiration of the redemption period, on February 15, 2013, Fannie Mae initiated eviction proceedings against Plaintiff in Michigan state court. Plaintiff then filed a Counter-Complaint and sought removal to this Court in a related case on March 1, 2013. (13-cv-10839, Dkt. # 1). After this Court issued a show cause order as to why Plaintiff's Counter-Complaint should not be remanded to state court as improperly removed under the "well-pleaded complaint" rule and under 28 U.S.C. § 1441(b)(2), the parties stipulated to a remand. (*Id.* at Dkt. ## 5, 7). Back in state court, the parties stipulated to an

order severing Plaintiff's Counter-Complaint and realigning the parties to make the Counter-Complaint the affirmative claim in this dispute.[2] (Ex. C to Def's Notice of Removal, Dkt. # 1-4, at 3-6).

Plaintiff's Complaint generally challenges the foreclosure proceedings under the Due Process and Equal Protection Clauses, Michigan statutory and common law, and the Federal Fair Debt Collection Practices Act. (Plf's Compl., Dkt. # 1-5). Upon timely and appropriate removal by Fannie Mae, this Court entered an order permitting the FHFA to intervene in its capacity as Fannie Mae's conservator. (Dkt. # 6). Both Defendants have now moved to dismiss Plaintiff's Complaint. As set forth below, this Court GRANTS Defendants' Motions and dismisses Plaintiff's Complaint with prejudice.

### III. DISCUSSION

**A.    Rule 12 Standard**

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550

---

[2] For ease, this Court refers to the "Counter-Complaint" as the Complaint in this matter.

U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Put another way, complaints must contain "plausible statements as to when, where, in what or by whom," *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

**B.     Plaintiff's claims are without merit**

Plaintiff's Complaint asserts five counts. Count I, titled "Injunctive Relief," requests that this Court enjoin any eviction from the Property and order that Fannie

6

Mae comply with Michigan's foreclosure statute. (Plf's Compl., Dkt. # 1-5, at ¶¶ 27-42). Counts II and III assert violations of the Due Process and Equal Protection Clauses of the U.S. Constitution. (*Id.* at ¶¶ 43-51). Count IV, titled "Slander of Title/Quiet Title," claims that Fannie Mae's attempt to enforce the Sheriff's Sale has slandered Plaintiff's title to the Property. (*Id.* at ¶¶ 52-54). Lastly, Count V asserts violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (*Id.* at ¶¶ 55-70). Each is addressed in turn.

    1.    **Count I Fails Because Plaintiff Cannot Allege An Independent Action For Injunctive Relief**

As this Court has noted before in other mortgage foreclosure cases, Plaintiff's request for injunctive relief in Count I must be denied because injunctive relief is a remedy and not an independent cause of action. *See, e.g., Riley-Jackson v. Ocwen Loan Servicing*, 2013 WL 5676827, at *5 (E.D. Mich. Oct. 18, 2013) (Rosen, C.J.); *see also Terlecki v. Stewart,* 278 Mich. App. 644, 663 (2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action."). "It is not the remedy that supports the cause of action, but rather the cause of action that supports a remedy." *Henry v. Dow Chem. Co.,* 473 Mich. 63, 96-97 (2005) (citation omitted). Therefore, a plaintiff cannot advance a request for an injunction without a legally cognizable underlying substantive cause of action. *Terlecki, supra.* Plaintiff's Count I in this case purports to state a separate request for injunctive relief, and, therefore, fails to state

a claim. To the extent injunctive relief is requested as a remedy, as Plaintiff has failed to state any legally cognizable claim in her other counts as discussed in detail below, she has no underlying cause of action upon which a request for injunctive relief may be based. As such, Plaintiff's Count I must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief may be granted.

### 2. Counts II and III Fail Because Fannie Mae Is Not A State Actor

It is axiomatic that without state action, constitutional claims challenging foreclosure proceedings -- here, claims under the Due Process and Equal Protection Clauses -- fail as a matter of law. *See, e.g., Northrip v. Fed. Nat. Mortg. Ass'n*, 527 F.2d 23, 25 (6th Cir. 1975). With sweeping and flowery prose more appropriate for the floor of a legislature than in a court filing, Plaintiff argues that FHFA's conservatorship of Fannie Mae and Freddie Mac beginning in 2008 transformed these entities into government actors. In so arguing, Plaintiff asks that this Court "have the temerity to rule against [a] 'revolting' trend in the judiciary" universally rejecting this argument. (Plf's Resp., Dkt. # 15, at 10).

Plaintiff's position here is as bold as it is bald: Federal courts in the Eastern District of Michigan -- as well as those across the country -- have comprehensively examined the issue and found that neither Fannie Mae nor Freddie Mac are governmental actors post-conservatorship pursuant to the Supreme Court's

8

decision in *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995). *See, e.g., Fed. Home Loan Mortg. Corp. v. Shamoon*, 922 F. Supp. 2d 641, 644-45 (E.D. Mich. 2013) (Edmunds, J.) (collecting cases); *see also In re Kapla*, 2014 WL 346019 (E.D. Mich. Jan. 30, 2014) (Duggan, J.); *Williams v. Fed. Nat. Mortg. Ass'n*, 2013 WL 5445883 (E.D. Mich. Sept. 30, 2013) (Roberts, J.); *In re Hermiz*, 2013 WL 3353928 (E.D. Mich. July 3, 2013) (Steeh, J.); *Colbert v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1629305 (E.D. Mich. April 16, 2013) (Borman, J.); *Bernard v. Fed. Nat. Mortg. Ass'n*, 2013 WL 1282016 (E.D. Mich. March 27, 2013) (Cohn, J.); *Yousif v. Fed. Nat. Mortg. Ass'n*, 2013 WL 980159 (E.D. Mich. March 13, 2013) (Steeh, J.); *Fannie Mae v. Mandry*, 2013 WL 687056 (E.D. Mich. Feb. 26, 2013) (Edmunds, J.); *Fed. Home Loan Mortg. Corp. v. Matthews-Gaines*, 2013 WL 423777 (E.D. Mich. Feb. 4, 2013) (Cook, J.); *Rubin v. Fannie Mae*, 2012 WL 6000572 (E.D. Mich. Nov. 30, 2012) (Hood, J.). Notwithstanding these on-point Federal authorities, Plaintiff instead argues that this Court should follow two decisions by two separate Ingham County judges interpreting federal law to the contrary. *See Fed. Home Loan Mortg. Corp. v. Kelley,* No. 12-885-AV (Mich. Cir. Ct. Feb. 12, 2013) (Aquilina, J.); *Fannie Mae v. Everingham*, No. 12-1286-LT (Mich. Dist. Ct. April 9, 2013) (Boyd, J.).

    This Court must decline Plaintiff's invitation to follow the decisions of these state courts. In addition to lacking substantive legal discussion, these state court

9

decisions opining on issues of federal law are "entitled to no deference whatsoever." *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 528 (6th Cir. 2012) (citation omitted).[3]

Whether this "trend" is "revolting" is not for this Court to decide, but whether this "trend" is legally correct is. This Court now joins the numerous other Federal courts to find that Fannie Mae is not a state actor and Plaintiff's audacious request to this Court to the contrary is not well taken. Accordingly, Plaintiff's claims predicated upon constitutional violations -- Counts II and III -- fail to state a claim upon which relief may be granted.

> **3. Count IV Fails Because Plaintiff Has Failed To Demonstrate A Violation Of Michigan's Foreclosure By Advertisement Statute**

Plaintiff challenges the foreclosure proceedings, asserting that Bank of America failed to comply with the loan modifications procedures set forth in M.C.L. § 600.3205(a) and (c).[4] This challenge fails because she no longer possesses any interest in the Property and therefore lacks standing to challenge the foreclosure proceedings. Under Michigan constitutional jurisprudence, a party

---

[3] The Court notes that on January 14, 2014, Ingham County Circuit Court Judge Clinton Canady III reversed the *Everingham* decision. *Fannie Mae v. Everingham*, No. 13-430-AV (Mich. Cir. Ct. Jan. 14, 2014) (Canady III, J.). The *Kelley* matter is also currently pending appeal before the Michigan Court of Appeals.

[4] Plaintiff also alleges that the foreclosure was improperly adjourned -- from June 2011 through February 2012 while she "was in a modification." (Plf's Compl., Dkt. # 1-5, at ¶¶ 14, 35). She, however, neither provides any further facts to support this assertion nor recognizes that Michigan law expressly permits adjournment of foreclosure proceedings. *See* M.C.L. § 600.3220.

asserting the violation of a statute may have constitutional standing to assert a claim yet lack *statutory* standing to do so. "That is, a party that has constitutional standing may be precluded from enforcing a statutory provision, if the Legislature so provides." *Miller v. Allstate Ins. Co.*, 481 Mich. 601, 607 (2008). To determine if statutory standing exists, the question must be asked whether the Legislature "has accorded this injured plaintiff the right to sue the defendant to redress his injury." *Id.* (citation omitted). This inquiry "simply [entails] statutory interpretation." *Id.*

While Michigan's foreclosure by advertisement statutory scheme provides certain steps that the mortgagee must go through to validly foreclose, it also controls the rights of both the mortgagee and the mortgagor once the sale is completed. *See* M.C.L. § 600.3204 *et seq*; *see also Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 50 (1993). In relevant part, the statute provides the mortgagor with a certain timeframe in which to redeem the property. M.C.L. § 600.3240. Once the redemption period following the foreclosure of a property expires, a plaintiff's rights in, and title to, the property are extinguished, and she loses all standing to bring claims with respect to the property. *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 185 (1942) (mortgagors "lost all their right, title, and interest in and to the property at the expiration of their right of redemption"); *see also Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir.

2013) (citing *Piotrowski*); *Overton v. Mortg. Elec. Registration Sys.*, 2009 WL 1507342 (Mich. App. May 28, 2009) ("Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished.").[5] Here, the redemption period expired on February 7, 2013. Plaintiff has not put forth any facts that indicate that she timely attempted to redeem the Property. Because Plaintiff failed to redeem the Property before the redemption period expired, Bank of America became vested with "all right, title and interest" in the Property by operation of law. At that point, Plaintiff, the former owner, lost standing to assert claims with respect to the Property.

"Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Conlin*, 714 F.3d at 359

---

[5] Courts in this District are split as whether *Overton* is a "standing" -based or "merits" -based decision. *See Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) (collecting cases). While the Sixth Circuit has recently questioned those decisions treating *Overton* through the standing prism, it has not done so in a published opinion. *See Vanderhoof v. Deutsche Bank Nat. Tr.*, --- F. App'x ---, 2014 WL 211819, at *2 (6th Cir. 2014); *El-Seblani v. IndyMac Mortg. Serv.*, 510 F. App'x 425, 429 (6th Cir. 2013); *Mourad v. Homeward Residential, Inc.*, 517 F. App'x 360, 367 (6th Cir. 2013); *Houston*, 505 F. App'x at 548. This Court has consistently adhered to the former, absent a challenge to the validity of the foreclosure sale for fraud. *See, e.g., Sembly v. U.S. Bank Nat. Ass'n*, 2012 WL 32737, at *1-2 (E.D. Mich. Jan. 6, 2012). However *Overton* may be properly categorized, Plaintiff's claim fails because she did not challenge the foreclosure before the redemption period, failed to redeem the Property, and failed to show -- as set forth in text above -- fraud or irregularity in the foreclosure process.

(citations omitted). As the Sixth Circuit recently instructed in *Conlin*, "a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period." *Id.* at 359-60. "[N]ot just any type of fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Id.* at 360 (citations omitted and alteration in original).

Here, Plaintiff attempts to make a showing of fraud or irregularity by asserting that she complied with the TPP's terms and was therefore eligible for a modification. Yet, Plaintiff alleges that Bank of America ultimately *denied* her modification request and did so before it instituted foreclosure proceedings. (Plf's Compl., Dkt. # 1-5, at ¶ 13). There is no right to a loan modification, *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (Duggan, J.), and Plaintiff has not alleged sufficient facts to meet Michigan's "high standard" under *Conlin.* 714 F.3d at 359-60.[6]

---

[6] To the extent Plaintiff attempts to convert the TPP to a formal and final loan modification, the statute of frauds bars such a claim because it is not signed by Bank of America, as well as does not reflect misconduct related to the foreclosure process itself. *Goss v. ABN AMRO Mortg. Group*, --- F. App'x ---, 2013 WL 6698041, at *3-7 (6th Cir. 2013); *Heikkinen v. Bank of Am.*, 2012 WL 628608, at *6 (E.D. Mich. Feb. 27, 2012) (Edmunds, J.); *see also Queener v. Bank of Am.*, 2013 WL 6038869, at *2 (E.D. Mich. Nov. 14, 2013) (O'Meara, J.) ("In this case, Plaintiffs do not allege fraud or an irregularity in connection with the foreclosure sale itself. Rather, Plaintiffs' claim[] of fraud. . . [is] based upon the allegation that Bank of America led them to believe that they would receive a loan modification and told them to stop making their monthly payments. Any promise from a financial institution to modify a loan must be in writing and signed by an authorized person to be enforceable.").

Even if Plaintiff had demonstrated Bank of America failed to comply with Michigan's foreclosure by advertisement statute, the only relief to which she would be entitled under Michigan law is to convert the foreclosure by advertisement to a judicial foreclosure. *See* M.C.L. § 600.3205c(8):

> If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure. If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1) . . . , the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31 [as a judicial foreclosure].

*Id.* The statute does not provide Plaintiff with a cause of action to quiet title, enable her to avoid foreclosure, or permit the recovery of damages or any other relief. Courts have examined this issue on multiple occasions and have concluded that a borrower's sole relief for a purported violation of the loan modification statutes is to seek to convert the foreclosure sale to a judicial foreclosure. *See, e.g., Riley-Jackson*, 2013 WL 5676827, at *4 (collecting cases). Under M.C.L. § 600.3205c(8), Plaintiff "had to act *before* the foreclosure by advertisement was completed." *Adams v. Wells Fargo Bank, N.A.*, 2011 WL 3500990, at *4 (E.D. Mich. Aug. 10, 2011) (Battani, J.) (emphasis added). Because Plaintiff did not so

14

act, her remedy expired and her claims under Michigan's foreclosure by advertisement statute are moot.[7]

For these reasons, Plaintiff cannot establish that she has some interest in the Property, as required under Michigan law to bring a claim for quiet title and slander of title. *See, e.g., Stinebaugh v. Bristol*, 132 Mich. App. 311, 316 (1984); *B & B Inv. Grp. v. Gitler*, 229 Mich. App. 1, 8 (1998). Plaintiff's Count IV fails to state a claim.

### 4. Count V Fails To State A Claim Under The Federal Debt Collection Practices Act

Plaintiff frames her Federal Debt Collection Practices Act (FDCPA) claim, 15 U.S.C. § 1692 *et seq.*, with the following incomprehensible paragraph:

> Fannie Mae, its agents, attorneys and successor in interest (collectively, "Fannie Mae") have, based upon the allegations in this . . . Complaint, violated the FDCA by use of false representations and deceptive means in pursuing . . . Plaintiff for payment of a debt given that the basis of Fannie Mae's ability to collect were for failure to grant to [Plaintiff] a loan modification for which she qualified, the improper rejection of Defendant's loan modification, among other things.

---

[7] Plaintiff also cannot show that she was prejudiced by Bank of America's alleged misconduct -- she admits she knew the foreclosure was taking place and did not act promptly to take steps to challenge the foreclosure or raise claims during the redemption period. In short, she is "incapable of 'demonstrat[ing] prejudice'" from Bank of America's alleged failure to abide by Michigan's foreclosure by advertisement statute. *Conlin*, 714 F.3d at 362 (citation omitted and alteration in original).

(Plf's Compl., Dkt. # 1-5, at ¶ 65). She then concludes that Fannie Mae violated the FDCPA by:

- "[E]ngaging in conduct the natural consequence of which was to harass, oppress or abuse any person in connection with the collection of debt;"
- "[F]alsely representing the character amount or legal status of the debt;"
- "[A]ttempting to collect amounts not permitted by law;" and
- "[C]ommunicating with consumers at any unusual time or place which should be known to be inconvenient to the consumer."

(*Id.* at ¶¶ 66-69). These "facts" represent the entirety of Plaintiff's FDCPA claim.

The Sixth Circuit recently held that a mortgage foreclosure is a "debt collection" under the FDCPA. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 460-65 (6th Cir. 2013). Conceivably, therefore, the FDCPA could apply here given that this case involves a mortgage foreclosure. That said, Plaintiff's nonsensical and barebone allegations fail to state a claim upon which relief may be granted. She has not set forth what debt collection activities *Fannie Mae* undertook or how *these activities* violated the FDCPA. Her cut-and-paste recitation of the elements does not set forth a "short and plain statement . . . showing that [she] is entitled to relief." *Twombly*, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)(2)).[8] Plaintiff's Count V must be dismissed.

---

[8] Plaintiff's defense of these allegations in her Response fares no better; it does not provide any specific facts as to how Fannie Mae violated the FDCPA. (Plf's Resp., Dkt. # 15, at 29). It is this Court's general practice to provide a plaintiff with an opportunity to amend her Complaint when faced with a dismissal that is

16

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that the Federal Housing Finance Agency's Motion to Dismiss [Dkt. # 7] is GRANTED.

IT IS FURTHER ORDERED that Fannie Mae's Motion to Dismiss [Dkt. # 9] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**


Dated: February 7, 2014   s/Gerald E. Rosen
                          GERALD E. ROSEN
                          CHIEF, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 7, 2014, by electronic and/or ordinary mail.

                          s/Julie Owens
                          Case Manager, 313-234-5135

---

readily curable because slight defects should not condemn an otherwise viable complaint. This practice need not be followed here, however, because amendment would be futile. *See, e.g., Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000). In response to Defendants' Motions, Plaintiff did not hint at additional factual allegations she could add to save her claims from dismissal. *Lewis v. Wheatley*, 528 F. App'x 466, 470 (6th Cir. 2013) (amendment is futile when, among other things, a plaintiff does not "provide[] any additional factual allegations that [it] would submit in an amended complaint").